UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before the Honorable William H. Orrick, Judge

IN RE: JUUL LABS, INC., )
MARKETING, SALES PRACTICES, ) No. 19-MD-02913 WHO
AND PRODUCTS LIABILITY )
LITIGATION. )
_____ )

San Francisco, California
Friday, February 19, 2021

### TRANSCRIPT OF REMOTE ZOOM VIDEO CONFERENCE PROCEEDINGS

### APPEARANCES VIA ZOOM:

For Plaintiffs:
        LIEFF, CABRASER, HEIMANN & BERNSTEIN
        275 Battery Street, 29th Floor
        San Francisco, California 94111-3339
BY: **SARAH R. LONDON, ATTORNEY AT LAW**

        GIRARD SHARP
        601 California Street, Suite 1400
        San Francisco, California 94108
BY: **DENA C. SHARP, ATTORNEY AT LAW**

        KELLER ROHRBACK LLP
        1201 Third Avenue, Suite 3200
        Seattle, Washington 98101
BY: **DEAN N. KAWAMOTO, ATTORNEY AT LAW**

        WEITZ & LUXENBERG PC
        700 Broadway
        New York, New York 10003
BY: **ELLEN RELKIN, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported Remotely By:   Ruth Levine Ekhaus, RMR, RDR, FCRR
                        CSR No. 11024, Official U.S. Reporter

```
 1   APPEARANCES VIA ZOOM:   (CONTINUED)

 2   For Defendant Juul Labs, Inc.:
                         KIRKLAND & ELLIS LLP
 3                       300 North LaSalle Drive
                         Chicago, Illinois 60654
 4               BY:     RENEE D. SMITH, ATTORNEY AT LAW

 5                       KIRKLAND & ELLIS LLP
                         1301 Pennsylvania Avenue N.W.
 6                       Washington, D.C. 20004
                 BY:     PETER A. FARRELL, ATTORNEY AT LAW
 7
                         MUNGER TOLLES & OLSON
 8                       350 South Grand Avenue, 50th Floor
                         Los Angeles, California 90071
 9               BY:     GREGORY P. STONE, ATTORNEY AT LAW

10   For Defendants Altria Group, Inc. and Philip Morris USA Inc.:
                         ARNOLD & PORTER KAYE SCHOLER LLP
11                       601 Massachusetts Avenue N.W.
                         Washington, D.C. 20001
12               BY:     JOHN C. MASSARO, ATTORNEY AT LAW

13   For Defendants Hoyoung Huh, Nicholas Pritzker and Riaz Valani:
                         KELLOGG HANSEN TODD FIGEL & FREDERICK
14                       1615 M Street N.W., Suite 400
                         Washington, D.C. 20036
15               BY:     MICHAEL J. GUZMAN, ATTORNEY AT LAW

16   For Defendants Mother Murphy's Laboratories, Inc., and
     Alternative Ingredients, Inc.:
17                       TYSON & MENDES, LLP
                         523 Fourth Street, Suite 100
18                       San Rafael, California 94901
                 BY:     MITCHELL MALACHOWSKI, ATTORNEY AT LAW
19

20   For Defendant 7-Eleven, Inc.:
                         ESBROOK LAW LLC
21                       77 W. Wacker Drive - Suite 4500
                         Chicago, Illinois 60601
22               BY:     CHRISTOPHER J. ESBROOK
                         ATTORNEY AT LAW
23

24            (APPEARANCES CONTINUED ON FOLLOWING PAGE)

25
```

```
 1   APPEARANCES:   (CONTINUED)

 2   For Defendant McLane Company, Inc.:
                              WHEELER TRIGG O'DONNELL LLP
 3                            370 - 17th Street, Suite 4500
                              Denver, Colorado  80202
 4                       BY:  MICHAEL L. O'DONNELL, ATTORNEY AT LAW

 5   For Defendant James Monsees:
                              ORRICK, HERRINGTON & SUTCLIFFE LLP
 6                            The Orrick Building
                              405 Howard Street
 7                            San Francisco, California 94105-2660
                         BY:  JAMES E. THOMPSON, ATTORNEY AT LAW
 8

 9   For Defendant Adam Bowen:
                              BOERSCH & ILLOVSKY LLP
10                            1611 Telegraph Avenue, Suite 806
                              Oakland, California 94612
11                       BY:  EUGENE G. ILLOVSKY, ATTORNEY AT LAW

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | | |
|---|---|---|
| 1 | **Friday - February 19, 2021** | **1:16 p.m.** |

                    P R O C E E D I N G S

                            ---o0o---

       **THE CLERK:** We're going to go ahead and proceed then in Case Number 19-2913, In Re: Juul Labs Incorporated.

  Counsel, if you would please state your appearances for the record.

       **THE COURT:** I think I will save counsel from --

       **THE CLERK:** You're right.

       **THE COURT:** -- stating their appearances and ask you, when you do speak, to identify yourself for the record.

  And so welcome, everybody, particularly those who were not in the in-chambers Zoom session that we just had. I apologize for being a little late today, but there were, as you saw in the case management statement, a number of issues that we had some discussion about in chambers, and I'll now allow some discussion outside of chambers in addition to letting you know my perspective on those things.

  So, first, the parties have reached agreements regarding the dismissal of retailer, distributor, and e-liquid defendants for the PI bellwethers. Those dismissals are fine, and the agreements that were reached related to them are fine.

  Second, with respect to the personal injury bellwether pool, I do not want to limit my selection of the appropriate bellwethers. And I understand there have been some plaintiffs

1  who decided not to proceed on those picks.  There was some
2  switching in and out.  There's a slight variance now in the
3  number of cases that were selected by the defendants rather
4  than the plaintiffs.
5  And at the end of the day, the selections are going to be
6  mine.  They're going to be based on the arguments that the
7  parties make with respect to what the appropriate bellwethers
8  are.  I don't want to limit my ability to pick the cases that
9  are the most appropriate to go forward.  And so at this point,
10 I'm not going to allow any further -- or I'm not going to allow
11 any changes to the way that those cases are selected.
12 There's no -- the parties have made clear, there's no
13 effort at manipulation of the pool or anything like that.  It's
14 just different people have different perspectives about what's
15 fair.  And at the end of the day, I decided that I wanted to
16 have the biggest pool as possible.
17 With respect to the class-action schedule, the change that
18 the plaintiffs have proposed, I said in the chambers session,
19 and I will say now, I don't like to alter case management
20 schedules; and I particularly don't like to alter trial dates
21 that I've imposed.  So the plaintiffs do appear to have good
22 reason for modifying the class certification schedule, and I'm
23 going to allow the modification.
24 I am also, as Altria suggested, extending the
25 expert-related and the summary judgment deadlines for the class

1  case, extending them by an identical amount because they're
2  tied together.
3      That doesn't resolve the issue that the defendants more
4  generally raised, which is that the entire schedule should be
5  extended for six weeks.  And as to that, a couple of things.
6      One is that this request, suggestion came as a result of
7  the plaintiffs raising their concern about extending the class
8  schedule the day before the CMC statement was due.  And so the
9  parties haven't had a chance to really consider what is
10 necessary, where there would be a good reason to extend the
11 schedules other than the class schedule that I just described.
12     So what I've asked lead counsel to do is to meet and
13 confer over this; try to agree, to the extent they can, on how
14 the schedule could be accommodated; and to the extent that they
15 don't agree, to propose competing schedules by next Friday so
16 that I can take a look at this and resolve it.
17     I do recognize -- and there have been statements in each
18 of the last three, I think, chambers sessions -- that this is a
19 very tight schedule and that the defendants have very real
20 concerns about whether it can be accomplished harmoniously with
21 the interests of justice.  And so I am aware of that and will
22 be looking at the schedule with that in mind if there's
23 disagreements.
24     Next, the defendants wanted to defer discussion on the
25 trial mechanics, which is fine.  I do think it will be helpful

for people sooner, rather than later, to be focusing on the trials because they're coming, and how they get put together would always make a difference to me when I was doing discovery and getting ready to try a case. I liked to know how it was going to end up being presented. So, but we'll defer that for at least a couple of months.

There is a new member of the plaintiffs' steering committing who was appointed, Ms. Baig, and that's fine.

The next issue involves discovery for the government entities. And we had a lengthy discussion on that. I'll just start off by saying that I thought it was clear that there would be sequenced discovery between Waves 1 and 2. And since I didn't select the Wave 1 cases for the government entities until February 2nd, that's the date that discovery is deemed served for them.

Mr. Stone raised a number of serious concerns about the short period of discovery for this wave of four months, and also raised the question of whether discovery shouldn't be ongoing for the second wave as well.

And, Mr. Stone, I don't know whether you wanted to discuss that any further on the record, just to let people know what your concerns are, or not.

**MR. STONE:** Your Honor, I appreciate that offer. I think what I was attempting to do was to persuade Your Honor of the seriousness of the problem, which I think you heard me out,

1  which I very much appreciate.  I don't think I need to share my
2  thoughts with others because I'm only trying to persuade you
3  and not others.
4      So I think we can recall this conversation that we had in
5  chambers if we ever need to; but, no, I don't need to address
6  it further here.  I appreciate the offer, however, Your Honor.
7  Thank you very much.
8          **THE COURT:**  Okay.  And I am very cognizant of the
9  concerns that you raise, the concern that Mr. Farrell has
10 raised in prior CMC sessions.  And I'm also top-of-mind
11 concerned about getting these cases to trial.  And so I hold
12 all of those close, and we'll be talking about them, I'm
13 confident, in CMCs to come.
14     The next issue was the question of how to treat the
15 dismissal of class representatives.  And I think there is a
16 difference between an individual personal injury plaintiff who
17 doesn't provide a fact sheet or an individual government entity
18 that doesn't provide a fact sheet and a class representative
19 who doesn't provide a fact sheet.  And the difference is that I
20 don't think that the class representative should be denied the
21 ability to be a class member and benefit from the results of
22 the class because there's no manipulation involved, and that
23 is -- it's just a fairer, in my mind, way of viewing things.
24     So, but, Ms. Smith, would you like to address that issue?
25         **MS. SMITH:**  Yes, Your Honor.  Thank you.

I think mainly -- we put our best things in the papers; but I will just reiterate that as a class rep, these are people who have actually submitted themselves to the jurisdiction of this Court. They are parties. And the way the order is, for them to -- for us to even be able to move to dismiss with prejudice, they have to have ignored this Court's orders repeatedly, repeatedly, repeatedly. So there is a difference.

And I do think there is also prejudice to defendants in the sense that we, by not getting their fact sheets, are not getting discovery of things that can be relevant to whether the class should be certified, because these are putative members of the class who we would have otherwise been entitled to get information from.

So that, in addition to what is in our papers, is what we would say on that. I don't know if others -- other defendants have other comments as well.

**THE COURT:** All right. Do the plaintiffs want to -- Ms. Sharp, do you want to respond to that at all?

**MS. SHARP:** Very briefly, Your Honor.

From our perspective, it would be an unduly harsh sanction to dismiss those claims with prejudice because, of course, those people do remain absent class members and ought to be entitled to recover if there's a recovery in the class case.

We hear the point the defendants have made, but from our perspective, for the reasons the Court said, these people are

differently situated; and dismissal with prejudice would, from our perspective, not be a very good fit, given the role that class representatives play.

  **THE COURT:** All right. Thank you. So I will not order that they be dismissed with prejudice.

  And I guess that's -- the final thing, the plaintiffs have provided to me the common benefit order filings, which I appreciate. And they show that there is an enormous amount of work going on. Not that I needed to see that. And, in fact, I'm very glad that Judge Andler is the one who's looking at what the plaintiffs have been up to as opposed to me.

  But I know that from the defense, as well as the plaintiffs, you are in the midst of a lot. And it's only going to get more intense and difficult as time goes on. And because of that, I'm very grateful that the lawyers that I see are acting as professionally and collegially as they can in order to both represent their client's interests but, also, the administration of the case in the fairest and most efficient way possible. So I, again, appreciate all of that from the lawyers.

  So with that, Ms. London, is there anything else that we ought to discuss?

  **MS. LONDON:** Just briefly, Your Honor.

  We wanted to just put on the record that we had agreed with the defendants and spoken with Your Honor about for any

lawyer appearing in a plaintiff bellwether deposition, if they have made an appearance in the main docket, they do not need to file a separate notice of appearance in the individual case docket. We just wanted to reflect that on the record so folks were aware of that.

**THE COURT:** Okay.

**MS. LONDON:** And other than that, Your Honor, we do plan to submit to Your Honor a stipulation or competing proposals on page limits and process for the deferred motions, and we'll do so on Monday.

**THE COURT:** Terrific. Okay.

**MR. KAWAMOTO:** Your Honor, very briefly, I also wanted to confirm, because it's raised in the papers, that the Wave 2 discovery against the government entities is stayed.

**THE COURT:** Is stayed for the moment. Now, we talked about that in the chambers session, and I imagine that will be revisited before nine months are up. But in the near term, they are stayed.

And you can discuss that as part of the discussions that will happen next week that ends up getting a schedule in front of me or at a later time, after -- in April, after we see how well the government entity discovery is proceeding.

**MR. KAWAMOTO:** Thank you, Your Honor.

**THE COURT:** All right. And, Ms. Smith, is there anything else from the defense perspective?

      **MS. SMITH:** Your Honor, just one clarification that may be helpful is for the motions to convert dismissals from without prejudice to with prejudice for certain personal injury plaintiffs, which is Docket 1243, which is up for Your Honor today.

    With a similar motion last time, I believe Your Honor did a provision where they would have 30 additional days to get in the PFS or it would be converted to a dismissal with prejudice. I don't know if Your Honor would prefer that same procedure. Perhaps it will be addressed in your minute order. But we just wanted to make sure that was covered as well.

      **THE COURT:** All right. Yes. And I assume that that's what will happen, and I will put it in the minute order regardless.

      **MS. SMITH:** Thank you, Your Honor.

      **THE COURT:** All right. Anything else from anybody on the screen?

                  (No response.)

      **THE COURT:** All right. It is good to see you all. I hope you stay healthy. And I will look forward to seeing you next month and hearing from you much more frequently and quickly.

    Take care, everybody.

      **MS. LONDON:** Thank you, Your Honor.

      **MR. KAWAMOTO:** Thank you, Your Honor.

1  **MR. STONE:** Thank you, Your Honor.

2  (Proceedings adjourned at 1:32 p.m.)

3  ---o0o---

4  **CERTIFICATE OF REPORTER**

5  I certify that the foregoing is a correct transcript

6  from the record of proceedings in the above-entitled matter.

8  DATE:   Monday, February 22, 2021

Ruth Levine Ekhaus, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court